Arthur VARS, Sr., Plaintiff,

v.

INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, IRON SHIPBUILDERS, BLACKSMITHS, FORGERS AND HELPERS, Defendant.

Civ. A. No. 9044.

United States District Court
D. Connecticut.

March 29, 1963.

944

Matthew Shafner, Smeraldi & Shafner, New London, Conn., for plaintiff.

Sabino P. Tamborra, Marvin M. Horwitz, Conway, Horwitz & Tamborra, Norwich, Conn., for defendant.

CLARIE, District Judge.

This action originally embodied three counts and was instituted pursuant to the authority of the Labor-Management Reporting and Disclosure Act of 1959, Title 29 U.S.C.A. §§ 411, 412, 413, 461, 462, 464 and 466. The defendant is a labor organization within the meaning of said Act composed of local subordinate lodges.

The first count sought an injunction ordering the defendant to restore the plaintiff to membership in the International Union and its Local #614 and in addition, claimed money damages incurred in the protection of his rights; the second count requested the removal of the trusteeship of the local union, alleged to have been wrongfully and illegally imposed; and the third count petitioned the Court to reinstate the plaintiff as the lawful incumbent president of the local union and to enjoin unlawful interference by the defendant. At the trial only the first count remained to be adjudicated. The second count had become moot by reason of the termination of the trusteeship, and the third count had been dismissed for lack of jurisdiction. Vars v. Interna-

tional Bros. of Boilermakers, Etc., D.C., 204 F.Supp. 245, 248.

The plaintiff, Arthur Vars, Sr., has been an employee of the Electric Boat Division of General Dynamics Corporation since June 1950 and a member in good standing in the defendant union from 1951 until his expulsion in October 1961. At the time of the imposition of the trusteeship, he was serving as the president of Local Lodge #614.

The Local Lodge was trusteed by the International Union and immediately thereafter steps were taken by the new trustee to remove the plaintiff on charges of malfeasance in office. Charges were filed in accordance with the procedures of Article XXI, Section 2 of the Constitution of the defendant International as adopted at its convention held in May 1961.

By a verified complaint (plaintiff's Exhibit "D") dated September 14, 1961, the trustee charged in a letter to the International President, that the plaintiff had engaged in certain specified activities in violation of the International's Constitution and the by-laws of Local Lodge #614. The International President by letter sent certified airmail, return receipt requested and postmarked September 19, 1961, Kansas City, Kansas, notified the plaintiff that charges had been filed against him; a notarized copy thereof was enclosed,[1] and notice of a hearing to be held on said charges on Friday, October 6, 1961 at 10:00 A.M. at the office of the Local Lodge. This notice was received by Vars on September 22, 1961. Pursuant to Article XXI, Section 4(a), an international vice-president was designated to conduct the hearing and take evidence.

At the appointed time, the hearing was convened and a stenographic transcript was made (plaintiff's Exhibit "F–1") which the plaintiff claims was not complete. The hearing was open to all members and several attended as observers. The plaintiff was advised that he was entitled to have a fellow union member assist him as counsel. Plaintiff waived this right. He objected to the hearing because of untimely and improper notice; and requested more time to prepare a proper defense and procure witnesses. His objections were overruled by the hearing officer and the trial proceeded. The plaintiff participated in the hearing, cross-examined witnesses, and presented evidence.

At the conclusion of the trial, the hearing officer reported his findings and conclusions as to plaintiff's guilt on each count to the International Executive Council, together with a transcript of the record made at the hearing. On October 23, 1961, the plaintiff received notice of the findings and conclusions of the hearing officer (plaintiff's Exhibit "T") and that the International Executive Council had voted to sustain his findings and to adopt his recommendation, namely, that the plaintiff be expelled from membership in the International and the Local Union.

The findings on all three separate charges were sustained by the Executive Council of the International. Defendant's counsel at this trial conceded that the evidence on the third count did not sustain a finding of guilty as charged. This third count charged that the plain-

1. "(1) That the said Art Vars, on or about August 28, 1961 and at various times thereafter, caused to be circulated to the membership of Local Lodge 614 certain material containing false and erroneous information, said false and erroneous information being detrimental to the welfare and best interest of the International Brotherhood and Local Lodge 614, all of said conduct being in violation of Article XXI, Section 1(d) of the International Constitution and Article XII, Section 2 of the By-Laws of Local Lodge 614.

"(2) That the said Art Vars, from June, 1960, through, to and including August, 1961, violated Article XXI, Section 1(f) of the International Constitution and Article XIII, Sections 1 and 2 of the By-Laws of Local Lodge 614 by willfully and fraudulently submitting false pay and expense claims to Local Lodge 614.

"(3) That the said Art Vars during his term of office, violated Article XXIII Section 1 of the International Constitution by willfully maintaining and displaying religious articles in the Local Office."

tiff wilfully maintained and displayed religious articles in the Local Lodge's office contrary to the provisions of Article XXIII, Section 1 of the International Constitution. This article does not prohibit such conduct, but provides:

"All religious and partisan political discussions shall be strictly prohibited and excluded from the proceedings of the International Brotherhood and its subordinate bodies."

No evidence appears in the record that the plaintiff discussed or caused to be discussed anything of a religious nature during Union proceedings. A finding of guilt on this charge by the Executive Council was unfounded and is hereby set aside as a matter of law.

The first charge alleged: "That the said Art Vars, on or about August 28, 1961 and at various times thereafter, caused to be circulated to the membership of Local Lodge 614 certain material containing false and erroneous information, said false and erroneous information being detrimental to the welfare and best interest of the International Brotherhood and Local Lodge 614, all of said conduct being in violation of Article XXI, Section 1(d) of the International Constitution [2] and Article XII, Section 2 of the By-Laws of Local Lodge 614.[3]"

The second charge alleged: "That the said Art Vars, from June, 1960, through, to and including August, 1961, violated Article XXI, Section 1(f) of the International Constitution [4] and Article XIII, Sections 1 and 2 of the By-Laws of Local Lodge 614 [5] by willfully and fraudulent-

2. "engaging in any activity or course of conduct contrary or detrimental to the welfare or best interest of the International Brotherhood or of a subordinate body;" International Constitution, Art. XXI, § 1(d).

3. "In addition to the offenses and penalties set out in the applicable provisions of the International and Subordinate Lodge Constitution, the following offenses and penalties shall be observed in this Subordinate Lodge, and any member who violates same shall, if found guilty after proper hearing as provided herein, be punished as warranted by the offense.

"(2) Circulating or causing to be circulated any false or malicious statement reflecting upon the private or public conduct, or falsely or maliciously attacking the character, impugning the motives, or questioning the integrity of any member or officer of this Brotherhood." Local Lodge 614 By-Laws, Art. XII, § 2.

4. "The basis of charges against officers or members of a subordinate body, * * * shall include, but shall not be limited to, any one or more of the following offenses:
"(f) mishandling, misappropriating or otherwise misusing union funds or properties;" International Constitution, Art. XXI, § 1(f).

5. "SALARIES. EXPENSES AND ALLOWANCES

1. Salaries and allowances—recognizing that the officers of this Subordinate Lodge must participate in cultural, civic, political, fraternal and educational activities in addition to their specific duties provided for in the International and Subordinate Lodge Constitution and By-Laws: that such activities benefit the organization and the members; that the time spent in such activities is unpredicable (sic) and unascertainable; such officers and employees shall in addition to their salary be granted a daily or weekly allowance.
Salaries and/or allowances shall be as follows:

| POSITION | SALARY | |
|---|---|---|
| President | $125.00 per month | Reimbursed Lost Time |
| Finan-Cor. Secretary | $175.00 per month | Itemized expenses |
| Treasurer | $ 50.00 per month | Reimbursed Lost Time |
| Recording Secretary | $ 15.00 per month | Reimbursed Lost Time |

2. Expenses when out of town on authorized business for the Subordinate Lodge officers, representatives or employees (such as Delegates or Assistant Business Managers) shall receive for expenses, actual railroad fare and pullman fare (when necessary) or nine cents (9¢) per mile for car mileage; hotel and meal expenses not to exceed $30.00 per day and other incidental expenses when itemized in an expense account." Local Lodge 614 By-Laws, Art. XIII, §§ 1, 2.

ly submitting false pay and expense claims to Local Lodge 614."

The issues to be determined by the Court at this time are: (1) Did the defendant comply with Section 101(a) (5) of the Bill of Rights of the Labor-Management Reporting and Disclosure Act of 1959, 26 U.S.C.A. § 411(a) (5), by serving the plaintiff with written specific charges, providing him with a reasonable time to prepare his defense and affording him a full and fair hearing. (2) Was the evidence presented at the Union hearing sufficient to sustain the findings and conclusions on the first two charges filed against the plaintiff?

It is the plaintiff's claim that the notice of charges received on September 22, 1961, fourteen (14) days before the October 6, 1961 hearing, did not conform with the notice requirements of Article XXI, Section 2(b) of the International Constitution [6] because he was not given fifteen (15) days' notice of the time and place of the hearing and the charges preferred against him. He further contends that the specifications of the charges were not sufficiently clear and specific to adequately acquaint him with the nature of the charges and that he was prejudiced thereby.

He claimed further that he asked for a delay or postponement of the hearing to a later date, so that he might properly prepare his defense and procure witnesses to testify in his behalf. Because this request was denied at the hearing, he claims his rights were prejudiced and he was not thereby afforded a full and fair hearing. The plaintiff further claims that the findings of the Executive Board are a nullity since the trial body failed to make a decision in writing and send him a copy by registered or certified

mail within ten (10) days of the trial's conclusion, in violation of Article XXI, Section 4(d).[7]

"When one becomes a union member, he agrees to be governed by the union constitution by-laws, and rules, not inconsistent with rights and procedures established by the Act; and the constitution and by-laws of the union express the terms of the contract which define the privileges secured and the duties assumed by those who become members." Cleveland Orchestra Com. v. Cleveland Fed. of Musicians, 303 F.2d 229, 230 (6 Cir. 1962). Smith v. General Truck Drivers, Etc. Union Local 467, D.C., 181 F.Supp. 14, 17 (1960); Rizzo v. Ammond, 182 F.Supp. 456, 471 (D.N.J.1960).

In the present case, the International President notified the plaintiff of the charges and the date of the hearing within the 30-day period and he did give seventeen (17) days' notice to the plaintiff of the time of the trial by his having posted said notice, addressed to him, by certified mail, from Kansas City, Kansas.

"Whether the authority springs from common law or custom, from contract or from direction by the notice, from rule of court or of administrative tribunal, or from the sovereign will of the legislature, it is not necessary that a notification authorized to be made by mail be received. Its effectiveness dates from the time of mailing." § 633 "Merrill on Notice". Schlotzhauer v. Central Mutual Ins. Assoc., 233 Mo.App. 1132, 128 S.W. 2d 1061 (1939); The American Workmen v. Night, 202 Ark. 678, 152 S.W.2d 545 (1941).

---

6. " * * * the International President * * * shall fix the time for trial which shall be not later than thirty (30) days following receipt of such charges and shall give the accused at least fifteen (15) days notice of the time and place of a hearing on such charges at which such accused shall appear and defend * * *". International Constitution, Art. XXI, § 2 (b).

7. "As soon as possible, but not more than ten (10) days after the conclusion of the trial, the trial body shall make a decision in writing and send a copy to the accused and other directly interested parties by registered or certified mail. The decision shall state its reasons * * *". International Constitution, Art. XXI, § 4 (d).

Therefore, notwithstanding the fact that the plaintiff claimed to have received the notice of the hearing fourteen (14) days prior to the same rather than fifteen (15) days, it is not inconsistent with the provisions of Section 2(a) and 2(b) which sub-sections together establish the terms of the notice contracted for between the Union and its members. It is significant to note that at no time has the plaintiff claimed that the one-day variance in his receipt of the notice actually prejudiced the preparation of his defense.

■ Another issue raised was that the written charges were not sufficiently specific. For this reason on the day of the hearing, he asked that the matter be continued so that the allegations could be made more specific. Actually, the plaintiff was very familiar with the written contents included in the flyer (plaintiff's Exhibit "P") which he admittedly prepared and caused to be distributed. There is no reason why this charge should have been made more specific.

■ The second item of charges alleged that during a stated period of given dates, the plaintiff wilfully and fraudulently submitted false pay and expense claims. This charge was not so vague as to be prejudicial to the plaintiff's preparation of his defense. The plaintiff actually knew the nature of the charges contained in item #2 which resolved itself into the simple issue of whether or not he had claimed and been paid for time spent on Union business for which he had not actually lost time from work. The plaintiff knew at the time that he had been charging regular time for work spent on Union business even though it was not lost time in the boat-yard. It is apparent from the contents of the first circular (plaintiff's Exhibit "P") that plaintiff knew and understood the nature of the charges when he said: "He (the trustee) is trying to say that this is illegal, that I'm only entitled to forty hours as lost time, because he says, technically, our By Laws were not in effect then, because they were not approved by the International President."

Subsequent to his receiving a copy of the charges, the plaintiff consulted a firm of attorneys to represent him and they prepared data, questions and objections which were to be used at the hearing. At no time after receipt of notice and prior to the hearing did the plaintiff or his counsel actually file any request for a postponement or request for a bill of particulars clarifying the union charges. Plaintiff did claim that he had tried to telephone the International President the day before the hearing to make such a request, but was unable to reach him. Had he seriously sought such action, his counsel could have taken timely steps to accomplish this purpose. Plaintiff's waiting until the commencement of the hearing, before requesting postponement or a bill of particulars was a dilatory tactic and the hearing officer was justified in exercising his discretion in denying it.

■ The next issue is whether the plaintiff was given a full and fair hearing. It is claimed that the transcript of the hearing is not a verbatim transcript and does not include several of the colloquies between him and the hearing officer. In this respect, the evidence educed at this Court trial indicated that while there may have been some comments or statements declared irrelevant by the hearing officer, which were not included in the transcript, the Court finds that those statements not included were not material to the charges and issues considered at the hearing and did not in fact prejudice the plaintiff.

■ On charge #1, three flyers prepared and distributed by the plaintiff were offered in evidence against him at the Union hearing, (plaintiff's Exhibits "P", "Q" and "R"). These charges were mailed to the plaintiff September 19, 1961. The three offending flyers were distributed on August 28, 1961, (P), on or about September 21, 1961 (Q), and on or about October 3, 1961 (R), respectively. Thus, it is clear that only the August 28, 1961 flyer could properly have been the basis for this charge, since the other two flyers had not been distributed until

after notice of the hearing and the charges had been mailed.

Whether or not the hearing officer and subsequently, the Executive Council, found the plaintiff guilty on the first count of said charges because of the subject matter contained in the second and/or third flyer or whether they found him guilty solely because of the subject matter in the first flyer, it is impossible for this Court to ascertain. In either event, there was illegal evidence before them to be considered since the plaintiff was not given proper notice regarding the second and third flyers. Furthermore, it is the finding of the Court as a matter of law, that considering the plaintiff's Exhibit "P" alone, the contents thereof do not violate Article XXI, Section 1(d) of the International Constitution or Article XII, Section 2 of the By-laws of Lodge 614, in that they are within the category of fair comment and free speech protected and guaranteed by the Landrum-Griffin Act, Title 29 U.S. C.A. § 411(a) (2). Therefore, the Executive Council's finding the plaintiff guilty on the first count is hereby set aside.

■ The final matter to be determined is whether the valid evidence presented at the hearing is sufficient to sustain the findings and conclusions of the second count of said charges. In so doing it is not within the purview of this Court to substitute its judgment for that of the executive trial committee.

"It is not for this court to reexamine the evidence in order to see whether it would have arrived at the same conclusion as did the Trial Board." Rosen v. District Council No. 9 of New York City, Etc., 198 F.Supp. 46, 49 (S.D.N.Y.1961).

"'All that a union member is entitled to in any controversy between him and the union is a fair hearing.' * * * In determining whether the plaintiffs in the present case were afforded a 'fair hearing' the Court is neither authorized nor required to weigh the evidence presented to the union disciplinary body, or to substitute its judgment for that of the union body respecting the credibility of the witnesses or the weight of the evidence." Phillips v. Teamsters, Chauffeurs, Etc., Local Union No. 560, 209 F.Supp. 768, 771 (D.N.J.1962).

"* * * decisions of intra-union trial bodies in disciplinary proceedings before them, pursuant to the provisions of the constitution and by-laws of labor organizations, are final and conclusive, and binding upon a reviewing court as far as findings of fact are concerned." Phillips v. Teamsters, Chauffeurs, Etc., Local Union No. 560, supra at 772.

However, in determining whether a full and fair hearing had been granted, it is within the province of the Court to satisfy itself that the findings and conclusions of the presiding trial hearing officer, as ratified and adopted by the Executive Council, are sufficient as a matter of law to sustain a finding of guilt. Where the record clearly indicates that the rule of law upon which conclusions were reached was in error, then such findings and conclusions should be set aside.

The hearing record indicates (page 23) that Trustee Precht represented that the by-laws of the Local Lodge were adopted officially on January 19, 1961. Plaintiff's trial Exhibit "E", (hearing Exhibit "IV") indicates that the by-laws were adopted by the Local Lodge January 6, 1961, but they were not officially approved by the International President until March 14, 1961. The new constitution had not at that time been adopted and both the International and Local Union were governed by the International Constitution of May 15, 1957, defendant's trial Exhibit #6.

"The local by-laws adopted by each subordinate lodge shall be submitted to the international president for his approval before being printed and distributed to its members, *and such local by-laws shall become effective and be in force from the time of the international president's ap-*

*proval thereof* \* \* \*". Article XVI, Section 4, International Constitution, May 15, 1957.

Article XIII, Sections 1 and 2 of the local by-laws did not therefore become effective until March 14, 1961. Since there were no properly adopted by-laws of the local Lodge legally existent prior to that date, the charges set forth in the second item, insofar as they relate to Local Lodge by-laws, cannot be regarded as enforceable prior to that date. Any charge against the plaintiff originating prior to March 14, 1961 could be enforced only in accordance with the International Constitution of May 15, 1957 and provided the applicable Article and sub-sections were set forth in the charges. The pertinent sections for such a charge under the latter document would include Article XIII, §§ 9, 10, and 17.[8] However, item 2 of the notice of charges against the plaintiff referred only to Article XXI, Section 1(f) of the new constitution[4] effective on and after May 15, 1961 and is in this respect defective. It should be noted further that there is no provision in the new constitution, which provides for a carry-over, for purposes of union disciplinary action against a member who is charged with having offended the International Lodge Constitution of 1957.

The Court will consider the record and the charges for the period commencing with the effective legal date of the Local by-laws March 14, 1961 and the adoption of the International Constitution of May 11, 1961, on which were founded the disciplinary charges. During the period from March 14, 1961 to August 9, 1961, did the plaintiff wilfully and fraudulently submit false pay and expense claims to the Local Lodge #614?

Article XII, Section 1 of the Local by-laws effective March 14, 1961, (plaintiff's Exhibit "E" and defendant's Exhibit #7) provided that the president's salary and/or allowance should include $125.00 per month together with an allowance for reimbursed lost time. The employer did not pay union officers, when they were away from their work assignment on union duties. Vars, who was the chairman of the Local Lodge By-Laws Committee at the time they were adopted, contended that his copy (plaintiff's Exhibits "U" and "G") included the salary provision of $125.00 per month and in addition "all itemized expenses". He also claimed that Article XV, Section 9, of his copy of the by-laws had written in pencil in his own handwriting "all delegates, committees, officers, and stewards shall be paid for their time while serving on union business at straight hourly rates." However, the official copy (Exhibits "E" and #7 supra) omitted the word "officers". The Court finds that the only valid official by-laws are plaintiff's Exhibit "E" and defendant's Exhibit #7.

These by-laws were not something which evolved overnight. Prior to Vars' election to the presidency in May 1960, the Local Lodge had no by-laws. At the

---

8. "9. Any member who misappropriates any of the funds or property of a Subordinate Lodge shall be liable to suspension or a fine, not to exceed Fifty Dollars ($50.00), after a trial and conviction.

"10. Any member of the International Brotherhood who defrauds any Subordinate Lodge of money or property shall have charges preferred against him and shall be tried. Any International officer shall be authorized, either in person or by deputy, to prosecute any member charged with embezzlement of funds or otherwise defrauding a Subordinate Lodge or the International Brotherhood.

"17. Unless otherwise provided herein, any member who violates any of the provisions of this Article or any of the other provisions of the Subordinate Lodge Constitution shall be fined not less than Twenty-Five Dollars ($25) nor more than One Hundred Dollars ($100) for each offense, or suspended for not less than thirty (30) days nor for more than sixty (60) days, unless expelled from membership. Suspension or expulsion referred to in this Article shall mean suspension or expulsion from membership in any Subordinate Lodge and from the International Brotherhood." International Constitution, May 15, 1957, Art. XIII, §§ 9, 10, 17. (Subordindate Lodge Constitution).

---

4. See note 4 on page 946.

March 21, 1960 meeting amendments to the proposed by-laws were considered and it was voted that the president be paid a salary of $125.00 per month and an allowance of $100.00 itemized. The third reading and final approval of these by-laws was had at the meeting of July 8, 1960. They were then submitted to the International President for his approval; and he rejected them on September 19, 1960. Thereafter, at the meeting of January 6, 1961, it was voted to delete the $100.00 itemized expense account of the president and re-submit the by-laws to the International President. They were finally approved by him on March 14, 1961 (plaintiff's Exhibit "E"); his approval established their effective date.

A review of the items set forth on the joint exhibit, plaintiff's Exhibit "V" and defendant's Exhibit #9, commencing with the week ending March 18, 1961 through August 26, 1961, indicates that in only two instances does there appear a claim that the Local was charged in excess of the actual hours lost by the plaintiff from his work while on Union business.[9] The first is an item of three (3) hours for the week ending April 15, 1961 and the second is for eight (8) hours for the week ending July 8, 1961. This date is based upon a record of the reasons purportedly given by the plaintiff to his employer, explaining, his absence, either for reasons of Union business or for personal reasons. However, during this period, the same record indicates that Vars was absent from work for a total period of forty-nine and one-fourth (49¼) hours on Union business for which no remuneration was claimed or received from the Union. Is this the conduct of a man who is scheming to file fraudulent and false pay and expense claims?

During the aforesaid period, each of the expense vouchers had been signed and approved by at least two of the three trustees of the Local Lodge and in each instance checks issued in payment of these vouchers were co-signed by the treasurer. No one has claimed that the trustees or the treasurer were deceived or mislead; certainly there has been no claim that they were fraudulent.

Plaintiff's Exhibit "D", the treasurer's report submitted at the July 1961 meeting was offered in evidence as a typical monthly report read at each regular Local Lodge meeting, discussed by the members from the floor and voted upon and approved by the membership. In every instance where Vars' pay and itemized expense vouchers were paid during this period, not only did the trustees approve the vouchers, but the membership in regular meeting approved the treasurer's report as evidenced by the minute book, defendant's Exhibit #5. Any pay and expense claims were openly submitted, discussed, ratified and approved at regular Union meetings by the members. The minutes reflect no dissent. The charge of wilfully and fraudulently submitting false pay and expense claims is not supported in the record.

Furthermore, the findings and conclusions of Hearing Officer Jones relating to the second count state: (1) "I find that said Arthur J. Vars did have some questionable expense claims"; (2) "and find that he exceeded his authority in making lost time pay claims upon the Union for lost time during periods which he was not scheduled to work"; (3) "he failed to prove his authority". These findings and conclusions were sustained and adopted by the International's Executive Council.

No where is there a specific finding (unless reference is made to the boiler-

---

9. During the trial, counsel, in preparing a stipulation (defendant's Exhibit # 9) on the claims for expenses Vars made to the Union, discovered for the first time that Vars had made duplicate claims for the period August 15th to 20th, 1960 (defendant's Exhibits 4(c)1 and 4(d)7). He was paid twice for this period. The plaintiff testified that this was a mistake and that he would voluntarily make reimbursement. The defendant did not claim this to be any part of the defendant's case arising out of the hearing or evidence to prove charge # 2. The Court has treated it as such.

plate finding of "guilty as charged") that Vars wilfully and fraudulently submitted false pay and expense claims to Local Lodge #614. The absence of probative evidence before the hearing officer on charge #2, for the period during which the Local by-laws and new constitution were effective, does not sustain the finding of guilty. See Madden v. Atkins, 4 N.Y.2d 283, 174 N.Y.S.2d 633, 151 N.E. 2d 73, 74 A.L.R.2d 772; and concurring opinion page 80.

## DAMAGES

The plaintiff offered evidence that his expenses and claimed damages were the following: attorneys fees of $5,879.06 plus $200.00 for the final day of trial, a total of $6,079.06; a hearing transcript, $60.00; telephone calls, $35.00, loss of strike payment, $30.00, and lost wages due to days away from work during the hearing and court trial of $220.00 plus $30.00 for the final court day, a total of $250.00.

As a general rule, taxable costs are considered full compensation to a prevailing party for the expense of conducting litigation even though such costs are only nominal and wholly inadequate. The jurisdiction of this Court to grant relief in this civil action is derived wholly from the Federal Statutes; 29 U.S.C.A. § 412 provides in part:

"Any person whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchapter may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate. * * *"

A review of the legislative history of this law reveals its limitations and weaknesses. They are referred to in the House Report under dissenting views which discuss inadequacies of the Bill:

"One of the most serious inadequacies of the Senate bill is the lack of any effective enforcement procedure to protect union members from those few union officials who fail to recognize that a union belongs to its members. Under that bill the individual member must shoulder the burden of litigation costs himself. The union officer, on the other hand, have the entire resources of the union at their disposal. This impractical enforcement method is weakened still further in the committee bill." U.S.Code Cong. and Adm.News, Legislative History, Vol. 2, 86th Cong., 1st Sess. 2492 (1959).

Obviously this matter was the subject of Congressional consideration. In its wisdom Congress refrained from including attorneys fees as an item of damages. No issue has been raised in this litigation that the defendant's actions were motivated by willful malice nor has any claim been made for exemplary damages because of malice. Counsel fees and expenses are not compensable damages and are hereby denied.

The plaintiff lost no wages as a direct result of his separation from the Union; he continued his employment with the same employer as usual. Loss of wages because of attendance at a Union hearing or court trial arising out of Union disciplinary action is not a compensable damage under the law.

The plaintiff is entitled to the recovery from the Union of the $30.00 strike benefit payment; the cost of the hearing transcript and telephone calls are not recoverable damages.

The action of the International Executive Council of the International Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers and Helpers taken October 20, 1961, expelling the plaintiff, Arthur Vars, Sr., a/k/a Arthur J. Vars, from membership is hereby declared to be null and void; and said International, its Executive Council, officers, agents, and servants are enjoined from interfering with or otherwise restricting the plaintiff in the exercise of his rights and privileges incident to his membership as an individual member of said International insofar as such action is based upon the expulsion of October 20, 1961. Damages are awarded in favor of the plaintiff and against the defendant

in the amount of $30.00, together with taxable costs.

The foregoing opinion shall constitute the findings of fact and conclusions of law required to be filed by the Court pursuant to Rule 52(a).