Ernest J. JACQUES, Plaintiff,

v.

LOCAL 1418, INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, Lloyd Seruntine, John E. Regan, Wilton L. Logrie, Albert Perrone, Leo Sego, Stanley J. Bordelon, John E. Fogarty, Jr., and Alfred Chittenden, Defendants.

Civ. A. No. 12553 Division D.

United States District Court
E. D. Louisiana,
New Orleans Division.

Sept. 30, 1965.

Louis P. Trent, New Orleans, La., for plaintiff.

Alvin J. Liska, New Orleans, La., for defendants.

AINSWORTH, District Judge:

Ernest J. Jacques, a union member, seeks restoration to his union membership, as well as damages and attorney's fees, on grounds that he was wrongfully expelled, without benefit of a full and fair hearing, in violation of the provisions of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S. C.A. § 401 et seq. Jurisdiction of this court is invoked under 29 U.S.C.A. § 412, which provides for bringing of such actions in the United States courts.

Jacques was a member in good standing of Local 1418, International Longshoremen's Association, at New Orleans. On October 6, 1961, he was notified by mail of charges containing eight separately numbered specifications of alleged misconduct, and that he would be tried by the Union on October 13, 1961. On the latter date he appeared before the Union's Executive Board and was tried for the alleged misconduct, whereupon the officers of the Executive Board determined that petitioner had pled guilty to all eight specifications and on October 18, 1961, notified him by mail that he had been expelled from membership in the Union.

On October 25, 1961, Jacques wrote a letter to Ewell J. St. Amant, President of the Local District Council, complaining that he had not received a full and fair hearing. St. Amant testified that he construed petitioner's letter as an appeal to this Council.[1] However, he notified petitioner that the Local District Council had been inactive for the last eight or nine years and therefore his appeal would have to be made to the South Atlantic & Gulf Coast District Organization of the Union.

Rhum Hogan, Secretary of the Local District Council, corroborated St. Amant and testified that he had received a copy of Jacques' letter. Hogan is also a member of the South Atlantic & Gulf Coast District Organization. Petitioner made several attempts to contact the President and Secretary of the District Organization by telephone. The President resides in Galveston, Texas. Petitioner telephoned him about four times and left his number but received no response. After three to four months, Jacques sought legal advice and on August 15, 1962, this suit was filed.

We cannot agree that Jacques failed to exhaust the internal remedies of the Union. Petitioner attempted to obtain a review of his expulsion from the appellate tribunals. His letter of October 25, 1961 to St. Amant and Rhum Hogan prove this fact. The proper appellate tribunal had written notice of petitioner's appeal. Also, attempts were made to set up a meeting in response to the appeal.[2] We are satisfied that petitioner attempted to seek relief within the internal procedures of his Union. It was

---

1. According to the Constitution of I.L.A. (Article XIX) appeals from decisions of Local Union must be made to the District Council (if any) or to the District Organization.

2. The testimony of Jacques at page 27 of the transcript shows the futility of these attempts where he testified:

"Well, in order to have an appeal to the District Council, you had to do it by

only after ample time, without action by the Union on his appeal, that petitioner sought judicial relief.

■ Under the Labor-Management Reporting and Disclosure Act, 29 U.S. C.A. § 411(a) (4), union members are protected in their right to seek judicial relief subject to the proviso of exhausting *reasonable* internal remedies not to exceed a four-month period. We hold that petitioner has met the requirements of the proviso. The requirement of exhaustion of internal remedies is not an absolute one and each case involving union member's rights must be considered on its merits. See Detroy v. American Guild of Variety Artists, 2 Cir., 1961, 286 F.2d 75, cert. den. 366 U.S. 929, 81 S.Ct. 1650, 6 L.Ed.2d 388 (1961); Harvey v. Calhoon, S.D.N.Y., 1963, 224 F. Supp. 800.

■ We now consider whether petitioner received the full and fair hearing required by 29 U.S.C.A. § 411(a) (5) and Article 15(a), (b) of the Constitution and By-laws of the General Longshore Workers, I.L.A., Local 1418.

We hold that there was a lack of procedural due process. Petitioner was notified by mail of the charges on October 6, 1961, and was ordered to trial on October 13, 1961, a delay of only seven days from notice to date of trial. Local 1418's By-laws, Article 15, Section (b), require that Jacques receive not less than twenty days' notice where service is made by mail.[3] Giving only seven days' notice violated the By-laws, and is therefore not full notice.[4]

The Local Union's By-laws provide further in Article 15, Section 1(a):

"(a) The accusation shall be reduced to writing specifying: (1) the charges; and (2) the circumstances and *acts* upon which the charges are based, together with the *time* and *place* as nearly as can be ascertained." (Emphasis added.)

Of the eight specifications lodged against petitioner, only the first meets the Union's standard with regard to specifying the charges. That specification relates to petitioner's ownership of a "ship service," thereby making him an employer and resulting therefore in a conflict of interest.

■ As to the remaining specifications, none has reference to any particular time, place or circumstances and acts, as required by the Union's By-laws. We do not expect union officials to frame their charges and specifications technically as formal legal pleadings. However,

---

letter to the Council, and they had one party to come in from Baton Rouge on two occasions, but nobody else showed up for the meeting, and that's the way it went."

3. Article 15, Section (b) of Local 1418's By-laws provides in part:

"(b) The charges and specifications shall be presented to this association at a regular meeting signed by ten (10) members in good standing, and if received by a vote of this Association, the President, or the Financial and Recording Secretary-Treasurer, shall forthwith and under the seal of this association, notify the accused brother, that charges have been regularly preferred against him, and shall serve or caused to be served upon the accused, personally, if practicable, otherwise by mail directed to the last known address, with postage prepaid thereon, a copy of the charges and specifications attested by the Financial and Recording Secretary-Treasurer and under the seal of this association, together with a notice directing the accused to be present at a regular meeting of this Association or of a Committee, duly appointed at a regular meeting when such charges will be heard. In case of personal service not less than ten (10) days. In case of service by mail, not less than twenty (20) days thereafter. * * *"

4. In commenting on the criteria of a "fair hearing" the Fourth Circuit in Parks v. International Brotherhood of Electrical Wkrs., 1963, 314 F.2d 886, cert. den. 372 U.S. 976, 83 S.Ct. 1111, 10 L.Ed.2d 142 (1963), stated:

"The elements of such a 'fair hearing' often resemble constitutional due process requirements and generally encompass *full notice* and a reasonable opportunity to be heard—including the right to present evidence and the right to confront and cross-examine witnesses." (Emphasis added.)

we do require that they be so drafted as to inform a member with reasonable particularity of the details of the charges, as required by the By-laws, Article 15, Section 1(a). This is demanded by fundamental notions of due process.[5] Accordingly, while the standards adopted by the Local's By-laws satisfy the basic concept of due process, the Union has failed in this case to follow the requirements of its own procedures.

The Union contends that it was not required to present any evidence of misconduct at the hearing because Jacques pleaded guilty to all eight charges. However, Jacques denies this.[6] Nevertheless, in view of insufficient notice and failure of the specifications to appraise petitioner with particularity of the charges brought against him, this matter will be returned to the Local Union for rehearing in accordance with the Union's By-laws.

 We have not awarded plaintiff any relief on his claim for damages. The evidence is silent on this subject, no proof having been adduced to show actual damages. Since we are returning this case to the Union for retrial because of the lack of procedural due process, we are not now passing on the question of whether the Union had proper justification for plaintiff's expulsion, nor do we order his reinstatement as a member. The claim for attorney's fees is rejected, not being authorized by the provisions of 29 U.S. C.A. § 412. See Vars v. International Brotherhood of Boilermakers, Etc., D. Conn., 1963, 215 F.Supp. 943, aff'd 320 F.2d 576 (2 Cir. 1963).

Accordingly, the order of expulsion is set aside and the case is returned to Local 1418 for rehearing in accordance with the Local's By-laws both as to writ-

ten specifications and trial, the trial to be held not later than sixty days from the date of judgment herein. A written record of the evidence produced upon the retrial shall be made and preserved.

In the event the findings of the Local are adverse to petitioner, it shall be the Local's duty to inform petitioner of the proper tribunal and procedure to seek appellate review within the Union, pursuant to provisions of the Constitution and Rules of Order of the International Longshoremen's Association.

Judgment will be entered in accordance with this opinion.

---

5. The most glaring example of ambiguity is contained in the sixth specification of charges, which is quoted in full:
    "That the conduct of Ernest J. Jacques and his public record is not exemplary."
    To this charge or specification we do not see how Jacques could intelligently plead either guilty or not guilty.

6. Jacques' testimony is as follows (Tr. p. 29):
    "Q—Now, I ask you, sir, relative to these charges did you at any time intend during the hearing to enter a guilty plea as such to these charges?
    "A—Except that I own Jacques Ship Service, that's the only thing I could say I was guilty of * * *."