**Raymond L. CURTIS, Plaintiff-Appellant,**

**v.**

**INTERNATIONAL ALLIANCE OF THEATRICAL STAGE EMPLOYEES AND MOVING PICTURE MACHINE OPERATORS OF the UNITED STATES & CANADA, LOCAL NO. 125, Defendant-Appellee.**

**No. 81–1035.**

United States Court of Appeals, Seventh Circuit.

Submitted Jan. 11, 1982.*

Decided Aug. 30, 1982.

---

11. Respondents do not seek review of the merits.

* The parties waived oral argument and the appeal was therefore submitted for decision on the briefs and record.

Mary A. Anast, Chicago, Ill., George M. Fisher, Fisher & Von Willer, Hammond, Ind., for plaintiff-appellant.

Charles Orlove, Chicago, Ill., for defendant-appellee.

Before CUMMINGS, Chief Judge, SPRECHER ** and WOOD, Circuit Judges.

** Circuit Judge Robert A. Sprecher participated in the decision of this case and voted to affirm. However, he died May 15, 1982, and did not participate in the preparation or approval of this opinion.

HARLINGTON WOOD, Jr., Circuit Judge.

Congress passed the Labor-Management Reporting and Disclosure Act, popularly known as the Landrum-Griffin Act, 29 U.S.C. §§ 411–15, to protect individual members of labor unions from the unilateral, and sometimes repressive, actions of the union leadership. *Finnegan v. Leu,* —— U.S. ——, ——, 102 S.Ct. 1867, 1873, 72 L.Ed.2d 239 (1982); *Rosario v. Amalgamated Ladies' Garment Cutters Union, Local 10,* 605 F.2d 1228, 1238–39 (2d Cir. 1979), *cert. denied,* 446 U.S. 919, 100 S.Ct. 1853, 64 L.Ed.2d 273 (1980); *Navarro v. Gannon,* 385 F.2d 512, 518 (2d Cir. 1967), *cert. denied,* 390 U.S. 989, 88 S.Ct. 1184, 19 L.Ed.2d 1294 (1968). The Act secures union members the right to vote and participate in union elections, 29 U.S.C. § 411(a)(1), to freely meet, assemble, and discuss union affairs without interference from union leaders, 29 U.S.C. § 411(a)(2), and to control by ballot the levy of union dues and special assessments, 29 U.S.C. § 411(a)(3). The Act also guarantees that no member "may be fined, suspended, expelled, or otherwise disciplined ... unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; [and] (C) afforded a full and fair hearing." 29 U.S.C. § 411(a)(5).

Section 102 of the Act, 29 U.S.C. § 412, creates a cause of action for union members alleging a denial of rights under the Act. *See Finnegan,* —— U.S. at —— n.10, 102 S.Ct. at 1872 n.10. Congress empowered the district court to grant equitable or monetary relief. The plaintiff, Raymond Curtis, filed this action under section 102 against Local 125 of the International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators ("Local 125"). Curtis was expelled from the union on a variety of charges after a disciplinary hearing before the full union membership. The membership voted by approximately a two to one margin to convict Curtis and rescind his membership. Curtis alleges the proceedings were inadequate under section 411(a)(5) and seeks compensatory damages and reinstatement of his membership status.

## I.

The controversy began in 1975 when the complainant, George Kontol, filed disciplinary charges against Curtis, alleging several violations of the union constitution and by-laws. At the time, Curtis and Kontol were film projectionists and members in good standing of Local 125. The plaintiff worked at several area theaters in Portage County, Indiana; Kontol worked regularly at the Tivoli Theater. Kontol charged that Curtis had formed a partnership with Blacky Gross, owner of the Tivoli, caused Kontol's dismissal as the film projectionist there, and assumed Kontol's duties personally.

The plaintiff was tried on the charges at a disciplinary hearing. The local presented evidence indicating that rumors were circulating as early as December 1974 that Gross and Curtis had become partners. Earl McLachlan, the Local 125 business manager, testified that when questioned at that time both men confirmed the rumors. McLachlan added that Gross also acknowledged Curtis had paid him $7,500 to join the partnership and had agreed to work as the projectionist in Kontol's place for a percentage of theater gross receipts rather than the standard union wage set in the collective bargaining agreement. Both Gross and McLachlan believed the arrangement would result in a pay rate below the union wage, but disagreed over its permissibility under the union contract.

One month after his conversation with McLachlan, Gross abruptly fired Kontol. Following the discharge, two members of Local 125 observed Curtis operating the projector at the theater. In addition, McLachlan saw Curtis lock the theater several nights and observed his car parked in the vicinity on several other occasions.

Testifying at the hearing in response to the charges, Curtis denied a partnership existed with Gross. He denied operating the projector and stated the agreement with Gross involved operating the concession stand at the Tivoli, a business which

Curtis apparently ran in his spare time. Curtis also presented an affidavit from Gross, which explained that Kontol was fired because Local 125 officers refused to issue Gross a union membership card and allow him to operate the projector. Gross stated that McLachlan had agreed to this arrangement previously at their meeting. Gross did not directly deny that a partnership existed, but stated that he, not Curtis, had operated the projector since Kontol's discharge.

As mentioned, the membership convicted the plaintiff on all charges and voted to expel him. The plaintiff appealed to the international union president, who affirmed the conviction. The plaintiff then filed this action in the district court under section 102, 29 U.S.C. § 412, alleging the union disciplinary proceedings were unfair and inadequate. After a full trial, the magistrate entered judgment for Local 125. The plaintiff now appeals that decision. We affirm.

## II.

The plaintiff first argues that contrary to section 101(a)(5)(A), 29 U.S.C. § 411(a)(5)(A), he was not informed of the specific allegations against him. He specifically argues that the structure of the complaint was misleading and left him uncertain of the charges to be refuted because it listed the union laws allegedly violated in the first paragraph and the facts supporting those allegations in the second paragraph, but failed to combine those two paragraphs to inform him which instances of alleged misconduct amounted to a violation of any particular union law. He argues that, as a result, the complaint required him to speculate on the charges and the facts necessary to disprove them.

■ The plaintiff's testimony at trial, however, directly contradicts his argument on appeal. Curtis admitted at trial that he had read the complaint and understood the charges against him. Basing his finding on this testimony, the magistrate concluded that the complaint informed the plaintiff of the allegations against him and thus satisfied § 411(a)(5)(A). The plaintiff cites

nothing to dispute the finding or to indicate it is clearly erroneous.

A review of the complaint substantiates the magistrate's conclusion. The complaint cogently informed the plaintiff of the union laws involved and eight particular instances of conduct allegedly transgressing those laws. The plaintiff's presentation of his case and cross-examination of opposing witnesses at the disciplinary hearing indicates he understood those charges. The plaintiff does not contend his defense, where he denied forming the partnership with Gross and operating the theater projector, would have differed had the complaint taken another form. Rather, the gist of the plaintiff's argument is that the complaint was insufficient because it failed to follow a format which criminal indictments invariably take and allege in a single unit the particular union law involved and facts demonstrating its violation.

■ Though section 101(a)(5)(A) requires the charging document to contain "written specific charges," it does not require the elaborate specificity of a criminal indictment. *Ritz v. O'Donnell*, 566 F.2d 731, 735 (D.C.Cir.1977); *Tincher v. Piasecki*, 520 F.2d 851, 854 (7th Cir. 1975); *Eisman v. Baltimore Regional Joint Board of Amalgamated Clothing Workers of America*, 352 F.Supp. 429, 435 (D.Md.1972), *aff'd*, 496 F.2d 1313 (4th Cir. 1974). The complaint need only contain "a detailed statement of the facts relating to the [incident] that formed the basis for the disciplinary action." *International Brotherhood of Boilermakers v. Hardeman*, 401 U.S. 233, 245, 91 S.Ct. 609, 616, 28 L.Ed.2d 609 (1971). The document here satisfied that standard.

## III.

The plaintiff also argues that the guarantee of a full and fair hearing under § 411(a)(5)(C) includes the right to be represented by a lawyer. Over the plaintiff's objections before the proceedings, Local 125 officials refused to allow him professional legal representation. As the basis for this ruling, they cited an internal rule forbid-

ding non-union individuals from addressing union meetings.

Those courts considering the argument that § 411(a)(5)(C) includes the right to counsel have rejected it. *Smith v. Sheet Metal Workers International Association,* 357 F.Supp. 1386, 1393 (E.D.Tenn.1972); *Buresch v. International Brotherhood of Electrical Workers, Local 24,* 343 F.Supp. 183, 191–92 (D.Md.1971), *aff'd,* 460 F.2d 1405 (4th Cir. 1972); *Sawyers v. Grand Lodge International Association of Machinists,* 279 F.Supp. 747, 756 (E.D.Mo.1967); *Cornelio v. Metropolitan District Council,* 243 F.Supp. 126, 128–29 (E.D.Pa.1965), *aff'd,* 358 F.2d 728 (3d Cir. 1966), *cert. denied,* 386 U.S. 975, 87 S.Ct. 1167, 18 L.Ed.2d 134 (1967). The plaintiff argues, however, that these cases are outdated because the flexible and changing notions of due process incorporated into the Landrum-Griffin Act now require that a union member accused of wrongdoing be represented, if he chooses, by a lawyer. To support the argument, the plaintiff reasons that a union member cannot receive a fair hearing without counsel because (1) unions may now impose drastic sanctions on members violating union rules which Congress did not originally foresee in enacting § 411(a)(5)(C), and (2) the Sixth Amendment has been construed to provide a right to counsel in minor criminal trials where the defendant faces a far more lenient penalty than the sanction imposed here.

■ Congress did not expressly include a right to counsel in the Landrum-Griffin Act and the legislative history reveals that the action was deliberate. *See* H. Wellington, *Union Fines and Workers' Rights,* 85 Yale L.J. 1022, 1031 (1976) (hereinafter "Wellington"). Though Congress passed the Act intending to incorporate the standards of due process into union disciplinary proceedings, *Hardeman,* 401 U.S. at 246, 91 S.Ct. at 617, Congress intended disciplinary proceedings to remain primarily under local union control, *NLRB v. Allis-Chalmers Manufacturing Co.,* 388 U.S. 175, 194, 87 S.Ct. 2001, 2013, 18 L.Ed.2d 1123 (1967).

■ The union, accordingly, has a significant interest in controlling its disciplinary proceedings. The interest, singled out for special concern when Congress passed the Act, need not bend in order to provide the plaintiff the benefits which may accrue from his representation by legal counsel. Local 125 allowed members in good standing as representatives in disciplinary proceedings and prohibited appearances by outsiders, over who it had no effective means to control their conduct. Unlike courts or other adjudicatory tribunals, union locals lack contempt power or similar authority to control non-union members' participation in union proceedings. Requiring unions to permit unaffiliated individuals not subject to union laws, regulation, or licensing, to participate would seriously intrude on the "union self-government" which Congress carefully sought to preserve in passing the Act. *Id.*

■ In addition, despite his contentions otherwise, the plaintiff's expulsion was not a penalty which Congress failed to foresee when it passed the Act. In pertinent part, § 411(a)(5) provides that "[n]o member may be fined, suspended, *expelled,* or otherwise disciplined" (emphasis added) without a full and fair hearing. Even assuming, as the plaintiff asserts, that the power of union authorities to impose sanctions has been enhanced since Congress passed the Act in 1959, Congress from the beginning recognized that the union could expel a member for the breach of its laws. At that time, Congress concluded that the severity of the sanction did not justify providing for the right to counsel under the Act. Nothing in the plaintiff's argument compels a departure from this clear articulation of congressional purpose. *See,* Wellington, 85 Yale L.J. at 1031.

The plaintiff's second argument also has little force. The plaintiff argues that because the right to counsel exists in petty criminal offenses, where only a small fine may be imposed upon conviction, the right to counsel must exist in union disciplinary proceedings, where expulsion from the union often means the loss of a member's job

and the payment of a far greater penalty in lost income.

■ Under the Sixth Amendment, however, the right to counsel exists only where the defendant is to be incarcerated.

> [T]he central premise of *Argersinger* —that actual imprisonment is a penalty different in kind from fines or the mere threat of imprisonment—is eminently sound and warrants adoption of actual imprisonment as the line defining the constitutional right to appointment of counsel.... We therefore hold that the Sixth and Fourteenth Amendments to the United States Constitution require only that no indigent criminal defendant be sentenced to a term of imprisonment unless the state has afforded him the right to assistance of appointed counsel in his defense.

*Scott v. Illinois,* 440 U.S. 367, 373, 99 S.Ct. 1158, 1162, 59 L.Ed.2d 383 (1979). Although the plaintiff, having lost his job, may have suffered a substantial penalty, the incongruity he alleges between the right to counsel under the Sixth Amendment and the Landrum-Griffin Act is non-existent.

■ Finally, because of the informal nature of the proceedings, *see Rosario,* 605 F.2d at 1243, the exclusion of the plaintiff's lawyer from the hearing did not seriously jeopardize the presentation of his defense. The plaintiff's adversaries, the complainant George Kontol and Earl McLachlan, the union official representing Kontol, as well as the union officer presiding at the hearing had no legal training. The hearing was unfettered by technical rules of pleading, procedure, or evidence. Testimony irrelevant or unreliable under formal rules of evidence was presented and considered. Moreover, the union did not prohibit Curtis from consulting a lawyer in preparation for the disciplinary hearing. It appears Curtis hired a lawyer soon after the charges were filed and consulted him later in preparation for the hearing.

### IV.

The plaintiff next argues that in bringing the charges and holding the hearing, Local 125 violated several of its own internal rules. Curtis contends that the failure to apply these laws uniformly to all members charged with violating union laws denied him a fair hearing. He first contends that though he was notified, at intervals ranging from two weeks to two days before the hearing, of the identity of the witnesses testifying against him, this notice was deficient because the union constitution required the inclusion of a list of all potential witnesses with the original complaint. Second, the plaintiff asserts that, again in violation of its constitution, the union failed to file its charges within thirty days of the discovery of the incident upon which the charges were based. Third, he argues that the complaint, which alleged that the offenses occurred "on or about" February 4, misled him about the testimony to be introduced at the hearing because most of the testimony concerned events occurring on February 5, the day Kontol was fired.

■■ In *Hardeman,* the Supreme Court held that the Landrum-Griffin Act did not confer authority on the federal judiciary to independently construe internal union laws or to substitute a different interpretation of the union constitution for one already rendered by a union tribunal or disciplinary body. 401 U.S. at 242–43, 91 S.Ct. at 615. Congress passed the Act intending to ensure that labor unions act fairly in disciplining their members. *Allis-Chalmers Manufacturing Co.,* 388 U.S. at 194, 87 S.Ct. at 2013. Yet, fully apparent in the legislation is the congressional intention to leave the administration of disciplinary proceedings largely to the individual union local. *Id.* The Act does not allow the recovery of damages simply because the union has not followed its internal rules. *Rosario,* 605 F.2d at 1240; *Bunz v. Moving Picture Machine Operators' Protective Union, Local 224,* 567 F.2d 1117, 1118 (D.C.Cir.1977); *Martire v. Laborers' Local Union 1058,* 410 F.2d 32, 36–37 (3d Cir.), *cert. denied,* 396 U.S. 903, 90 S.Ct. 216, 24 L.Ed.2d 179 (1969); *cf. Jacques v. Local 1418, International Longshoreman's Association,* 246 F.Supp. 857 (E.D.La.1965), *aff'd on other*

*grounds,* 404 F.2d 703 (5th Cir. 1968) (seven-day period between notice of charges and disciplinary hearing violates Act, when union by-laws require twenty-day notice period). In order to prevail, the plaintiff must show that the union's technical failure to follow its rules deprived him of a fair hearing either by severely impairing his ability to prepare and present a defense or by seriously increasing the risk that the decision-maker will reach an erroneous determination. Although the plaintiff's complaints may have involved several departures from the strict letter of the union constitution, none deprived him of a fair hearing.

### V.

■ The plaintiff next contends that he was denied a fair hearing before an impartial tribunal because Earl McLachlan, a member of the Local 125 executive committee, voted with the membership on the plaintiff's guilt or innocence and also voted with the executive committee to recommend the plaintiff's expulsion after the membership had convicted him of the charges. McLachlan investigated Kontol's original allegations, represented Kontol in bringing charges against the plaintiff, and testified against Curtis at the hearing. The plaintiff asserts that because of his obvious bias, McLachlan's participation with both tribunals tainted the proceedings.

Under fundamental notions of procedural due process, the plaintiff clearly had the right to be tried before an impartial tribunal. *Tincher,* 520 F.2d at 854. In *Tincher,* we held that it is "inherently improper" for a member of the union's executive committee potentially biased against the accused to participate as a decision-maker in a disciplinary hearing. *Id.* at 855. Other courts have reached similar conclusions. *Feltington v. Moving Picture Machine Operators Union,* 605 F.2d 1251, 1257 (2d Cir. 1979), *cert. denied,* 446 U.S. 943, 100 S.Ct. 2169, 64 L.Ed.2d 799 (1980); *Stein v. Mutuel Clerks' Guild of Massachusetts, Inc.,* 560 F.2d 486, 491 (1st Cir. 1977); *Kuebler v. Local Union, 1091, Cleveland Lithographers & Photoengravers Union Local 24–P,* 473 F.2d 359 (6th Cir. 1973); *Falcone v. Dantinne,* 420 F.2d 1157, 1166 (3d Cir. 1969); *Ritz v. O'Donnell,* 413 F.Supp. 1365, 1371 (D.D.C.1976), *aff'd,* 566 F.2d 731 (D.C.Cir.1977); *Kiepura v. Local 1091, United Steelworkers of America,* 358 F.Supp. 987, 991 (N.D.Ill.1973). These cases, however, involved hearings before a select tribunal of four or five union officials. None presented a case where the hearing took place before the entire union membership. Here the plaintiff, given a choice between two tribunals, the local executive committee and a jury composed of the full union membership, selected the latter.

The record reveals that participation in the "jury" comprising the union membership was informal. Union members attended voluntarily and only those attending both sessions of the hearing were eligible to vote. Twenty-nine members voted and although the record is slightly unclear, jurors potentially biased in favor of the plaintiff, as well as against him, voted. While McLachlan and two witnesses testifying against the plaintiff voted, the plaintiff and his brother also cast ballots. The plaintiff does not contend that McLachlan attempted to influence other members during the balloting. Nor does it appear that the jury formally deliberated before the vote. Immediately after the close of the evidence, ballots were distributed and the members voted anonymously.

We see no reason to upset a decision reached by a tribunal of the plaintiff's own choosing. Modern methods of jury selection are poorly adapted to disciplinary hearings at a small local union. Congress passed the Landrum-Griffin Act to "insure the provision of democratic processes in the conduct of union affairs," *Allis-Chalmers Manufacturing Co.,* 388 U.S. at 194, 87 S.Ct. at 2013, and to protect individual union members "against the danger of overreaching by entrenched union leadership," *Tincher,* 520 F.2d at 854, *quoting Rota v. Brotherhood of Railway, Airline & Steamship Clerks,* 489 F.2d 998, 1003 (7th Cir. 1973), *cert. denied,* 414 U.S. 1144, 94 S.Ct. 896, 39 L.Ed.2d 99 (1974). The conviction

by a vote of the entire membership does not invoke these concerns simply because several members voting may have had preconceived notions of the plaintiff's guilt or innocence before hearing the full evidence. Congress passed the Landrum-Griffin Act intending to ensure that some union decisions were reached through democratic processes. If the defendant had selected a hearing before the local executive committee, the stricter standards set in *Tincher* would apply. Here the plaintiff was fairly convicted by a majority vote of the full union membership.

Nor did McLachlan's participation in the executive committee deny Curtis a fair hearing. After the membership convicted the plaintiff, the executive committee, acting under local by-laws, recommended his expulsion. A majority of the membership followed that recommendation and voted to expel Curtis.

The recommendation, following the membership's decision on the charges of the complaint, did not affect the decision on Curtis's guilt or innocence. Nor did this procedure otherwise compromise the plaintiff's fair hearing. The procedure does not differ from the usual procedure in a criminal trial where the prosecutor recommends a sentence to the court after the accused is convicted. The union membership was the ultimate arbiter of the penalty imposed. The members could easily discern the potential conflict in McLachlan's position and recognize that a recommendation from a leadership committee with members closely aligned to one litigant may not reflect the best interests of the local. The plaintiff was not denied a fair hearing simply because the union leadership recommended a penalty which the membership body was free to accept or reject.

Moreover, any influence McLachlan may have had was well-diluted. Casting one of five votes on a committee with authority only to recommend a penalty, he had little opportunity to affect the proceedings. In addition, the record at the hearing reveals that some union members were hardly reluctant to answer, criticize, or even ridicule

the union official presiding at the hearing. In light of those frank and critical comments made at a time when it was clear that McLachlan was attempting to frustrate union by-laws in order to bolster the case against Curtis, it appears that McLachlan's participation with the executive committee did not influence the membership's decision.

## VI.

Section 101(a)(5)(C), 29 U.S.C. § 411(a)(5)(C), also requires that at least some evidence presented at the hearing support the union's decision.

Section 101(a)(5)(C) of the [Landrum-Griffin Act] guarantees union members a "full and fair" disciplinary hearing, and the parties and the lower federal courts are in full agreement that this guarantee requires the charging party to provide some evidence at the disciplinary hearing to support the charges made. This is the proper standard of judicial review. We have repeatedly held that conviction on charges unsupported by any evidence is a denial of due process, and we feel that § 101(a)(5)(C) may fairly be said to import a similar requirement into union disciplinary proceedings.

*Hardeman*, 401 U.S. at 245–46, 91 S.Ct. at 616 (citations omitted). The plaintiff contends that no evidence was presented to support the decision on two of the eight charges.

The complaint charged that Curtis failed to file monthly worksheets with the local business office in violation of internal union rules and that he worked at the Tivoli after the theater management violated the collective bargaining agreement by failing to make its contributions to the union pension and the union health and welfare funds. The evidence presented plainly supports both charges.

Because some projectionist jobs were temporary and union officials assigned jobs on a seniority basis and because the union calculated its dues as a percentage of gross wages, union rules established to facilitate bookkeeping required members to file

worksheets indicating the number of hours worked, the rate of pay, and gross wages earned on each workday. McLachlan, as the local's business manager, testified that the plaintiff had not filed worksheets since February 5, 1975. While the local secretary, the union official responsible for this bookkeeping, could have corroborated McLachlan's testimony, it would have merely been cumulative. McLachlan's testimony provides a sufficient foundation for this conclusion.

In addition, Curtis did not contend that the worksheets were filed. Rather, he denied working at the Tivoli altogether and therefore argued that he was not responsible for filing the worksheets. The membership had adequate evidence to reject this contention and reach the contrary conclusion that since Curtis had worked at the theater, he was therefore responsible under union rules for submitting worksheets.

Curtis also argues that no evidence supported the finding that he worked at the theater after payments to the union funds ceased. McLachlan testified that payments to the union health and welfare funds stopped after December 5, 1974. In contrast, Gross stated in his affidavit that no payments were made after February 5, 1975, the day he fired Kontol. Since two union members testified that they observed Curtis operating the projector at the Tivoli on several occasions after February 5, ample evidence supported the charge that the plaintiff worked at the theater after the management failed to make payments required under the union contract.

For the foregoing reasons, the decision of the district court is AFFIRMED.