**Victor BATORSKY, Plaintiff,**

v.

**James J. SHEEDY, Individually and as President of the Public Employees Federation; Patricia J. Ford, Individually and as Secretary–Treasurer of the Public Employees Federation; Dennis A. Beagle, Individually and as Chair of the Committee on Ethics and Responsibility of the Public Employees Federation; Douglas Monington, Individually and as Chair of the Committee on Ethics and Responsibility of the Public Employees Federation; Bessie Flournoy, Michael Harrigan, Thomas McCabe, Daniel McHugh, Alice Peters, Mary Sagatis and Virginia Warner, as Members of the Committee on Ethics and Responsibility of the Public Employees Federation; Wayne E. Fuhrman, Individually and as Chair of the Ethics Hearing Panel of the Public Employees Federation; Cheryl J. Stanford–Smith; and the Public Employees Federation, Defendants.**

No. 95–CV–1670 (FJS).

United States District Court, N.D. New York.

June 4, 1998.

---

Office of Carl G. Dworkin, Albany, NY, Carl G. Dworkin, of counsel, for Plaintiff.

Public Employees Federation, Albany, NY, William Seamon, Harold Eisenstein, of counsel, for Defendants.

## MEMORANDUM–DECISION AND ORDER

SCULLIN, District Judge.

### Introduction

Plaintiff, Victor Batorsky, brings this action alleging that the Defendants[1] interfered with his right to sue and disciplined him without providing him due process in violation of the Labor–Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 411(a)(4) and (a)(5). Defendants James Sheedy and Patricia Ford assert a counterclaim for breach of fiduciary duty, seeking to recover union funds from the Plaintiff pursuant to LMRDA, 29 U.S.C. § 501(a).

Presently before the Court are the following motions: (1) the Defendants' motion for summary judgment on the entire Complaint and on their counterclaim; and (2) the Plaintiff's cross-motion for partial summary judgment on the Complaint and the counterclaim.[2]

### Background

On February 16, 1993, while serving as an elected Shop Steward and Division Council Leader for Division 234 of the Public Employees Federation, AFL–CIO ("PEF"),[3] the Plaintiff decided to participate in a lawsuit brought against the state seeking to have long-term provisional appointments to state jobs terminated because such appointments were contrary to state law ("Schulz lawsuit").[4] While the PEF was not a party to the lawsuit, many of the appointments were held by PEF members, some of whom were Division 234 members.

On February 18, 1993, at a regular Division 234 Council meeting which the Plaintiff chaired as Division Council Leader, a majority of the stewards agreed to support the Plaintiff's participation in the Schulz lawsuit and further agreed to authorize the use of $300.00 of Division funds toward expenses.[5] Given this authorization, the Plaintiff, as Division Leader, then co-signed a check in the amount of $245.00 for such costs.[6]

On March 16, 1993, Defendant Cheryl Stanford–Smith, a PEF and Division 234 member, filed a grievance against the Plaintiff alleging ethical violations. In particular, she alleged that the Plaintiff violated the Ethics Code by discussing the Schulz lawsuit at the Division Council meeting, participating in the lawsuit, and co-signing a check to use union funds to finance the lawsuit. (See Stanford–Smith Aff. Ex. B.) On August 18,

---

1. Defendants will be collectively referred to as "Defendants," unless otherwise specified.

2. Plaintiff believes that a trial on the issue of his damages is necessary.

3. The PEF is the exclusive bargaining agent for state employees in the Professional, Scientific, and Technical Unit. A Division is an administrative and communicative arm of PEF, and as such, is subordinate to the central governing bodies of the PEF.

4. The lawsuit will be referred to as the "Schulz lawsuit" after Robert Schulz, the President of All County Taxpayers Association ("ACTA"), the principal plaintiff.

5. It is unclear as to whether Plaintiff participated in either vote. Plaintiff asserts that he did not because he was chairing the meeting, and, as such, could only participate in voting when there was a tie vote. Plaintiff's assertion is supported by the deposition testimony of Defendants Sheedy and Ford who testified that it is custom for officers not to vote unless there was a tie. However, Defendants maintain that Plaintiff did take part in the vote. The Division 234 Council meeting minutes do not list which stewards voted and which stewards abstained.

6. The Division 234 Secretary, Doris Simon, was the other co-signor of the check.

1993, the Plaintiff and Defendant Stanford–Smith appeared before the Ethics Committee, and on November 9, 1993, the Ethics Committee decided to sustain all charges. In accordance with the PEF's Revised Ethics Code, the grievance was then referred to a Hearing Panel.[7] In February 1995, the Hearing Panel discussed the grievance and determined that: (1) the Plaintiff did not violate any ethics provision by merely discussing the Schulz lawsuit; (2) the Plaintiff did violate the Ethics Code by participating in a lawsuit which requested the dismissal of PEF members; and (3) the Plaintiff did violate the Ethics Code by voting for the use of union funds and co-signing a check to use such money to finance the lawsuit. (*See* Fuhrman Aff. Exs. A & C.) For these violations, the Plaintiff received a Letter of Reprimand. (*See* Fuhrman Aff. Ex. C.) The PEF Executive Board affirmed the Hearing Panel's decision.

Plaintiff commenced this action alleging two violations of the LMRDA. First, the Plaintiff asserts that the Defendants interfered with his right to sue in violation of 29 U.S.C. § 411(a)(4). Second, the Plaintiff claims that he was denied the due process guaranteed to union members under 29 U.S.C. § 411(a)(5). Defendants Sheedy and Ford, as PEF President and Secretary–Treasurer respectively, assert a counterclaim against the Plaintiff in order to recover the $245.00.

## Discussion

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is warranted if, when viewing the evidence submitted in a light most favorable to the non-moving party, the court determines that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 457, 112 S.Ct. 2072, 119 L.Ed.2d

265 (1992); *Commander Oil v. Advance Food Serv. Equip.*, 991 F.2d 49, 51 (2d Cir.1993). A genuine issue of fact is one that could be decided in favor of either party. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Where, as here, the Court is faced with cross-motions for summary judgment, the court is not obligated to grant either motion. Instead, each motion must be evaluated on its own merit. *See Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir.1993).

In their motion for summary judgment, the Defendants seek the dismissal of the Plaintiff's LMRDA claims on the following grounds: (1) that the Plaintiff was disciplined for improper use of union funds, not for participating in the lawsuit; and (2) that the Plaintiff received a full and fair hearing before being disciplined. The Court will address each of these arguments in turn.

## I.  § 411(a)(4):  The Right to Sue

■■■ Plaintiff argues that the Defendants disciplined him for participating in the Schulz lawsuit because they believed that the relief sought in the lawsuit was contrary to the interests of the union members.

Defendants contend that while union members have the right to sue, a union member does not have the right to use union funds to pay for the legal services rendered in pursuit of such litigation. Defendants assert that the Plaintiff improperly used union funds to finance the Schulz lawsuit and, in fact, did so in violation of PEF Division Fiscal Rule B6.[8] Defendants also maintain that the Plaintiff was disciplined only for such use of union money and not for his participation in the Schulz lawsuit.

The Letter of Reprimand sent to the Plaintiff informed him that he had been found guilty of the following:

---

**7.** The Hearing Panel had been recently created to conduct hearings and trials on serious grievances and impose discipline. The Hearing Panel consisted of five members, appointed by the President of PEF and confirmed by the Executive Board. All Hearing Panel members were Executive Board members as well. (*See* Beagle Aff. Ex. P.) The members of the Hearing Panel at the time the Stanford–Smith grievance was heard

were Defendants Wayne Fuhrman, Bessie Flournoy, Dan McHugh, Mary Sagatis, and Virginia Warner.

**8.** Fiscal Rule B6 prohibited the spending of division money on "legal fees." (Fuhrman Aff. Ex. B.)

1. Entering into a lawsuit whose remedies called for the termination of PEF-represented employees violated the PEF Code of Ethics, section (e): *"All members shall conduct themselves in a manner that is conducive to fairness and fair play, recognizing that the good and welfare of the brotherhood is the overriding concern of this Union."*

2. Voting for the expenditure of Division Funds and the subsequent co-signing for the check expending such funds violated the PEF Code of Ethics, section (a): *"No person shall misuse or improperly use the PEF name, logo or good offices"* and the PEF Code of Conduct A(4): *"Violations of Executive Board rules and guidelines for expenditures."*

Fuhrman Aff. Ex. C.

■ Section 411(a)(4) prohibits unions from limiting a union member's right to initiate or participate in any legal proceeding. *See* 29 U.S.C. § 411(a)(4). This provision applies to all legal actions whether or not the member is suing the union, an employer, or another entity. *See Moore v. Local 569 of the Int'l Bhd. of Elec. Workers*, 53 F.3d 1054, 1056–57 (9th Cir.1995) (quoting *Operating Eng'rs Local Union No. 3 v. Burroughs*, 417 F.2d 370, 373 (9th Cir.1969)).

As stated, the Plaintiff was disciplined in the Letter of Reprimand for two violations—co-signing the check to use union funds to finance the Schulz lawsuit and participating in such lawsuit. The co-signing of the Division 234 check made out to the ACTA for filing expenses related to the lawsuit by the Plaintiff as Council Leader was clearly in violation of PEF Fiscal Rule B6. (*See* Stanford–Smith Aff. Exs. B, C & D.) Defendants

had the right to discipline the Plaintiff for violating the fiscal rule notwithstanding a union member's right to participate in a legal proceeding under § 411(a)(4). *See Haas*, 832 F.Supp. at 287; *Local Union No. 1 v. International Union of Bricklayers*, 143 L.R.R.M. 2107, 2111, 1992 WL 118798.

However, based on the Letter of Reprimand, the Plaintiff was not only disciplined for co-signing the check, but was also disciplined for participating in the Schulz lawsuit, which sought the dismissal of PEF members from temporary appointments to state positions.[9] (*See* Fuhrman Aff. Exs. A & C.) It is unclear whether the Plaintiff was disciplined in his capacity as union member or elected representative of Division 234 who held two positions—Shop Steward and Council Leader, which was the highest ranking position within Division 234.[10] Whether this distinction affects the application of § 411(a)(4) was not addressed by the parties. In any event, it is clear that the discipline administered to the Plaintiff, i.e., the Letter of Reprimand, referred at least in part to his participation in a lawsuit, which he would, as a member of the union, have the right to do under § 411(a)(4). Therefore, the Court finds there are genuine issues of material fact which preclude summary judgment on this claim.

## II. § 411(a)(5): Due Process

Under § 411(a)(5), a union member must receive the following procedural safeguards before discipline is imposed: (1) written specific charges; (2) a reasonable time to prepare a defense; and (3) a full and fair hear-

---

**9.** It appears that the objective of the Schulz lawsuit was for the State of New York to terminate all temporary appointments to certain state positions because such appointments were contrary to state law. Because many of these temporary positions were held by PEF members, the Schulz lawsuit effectively sought the dismissal of PEF members from these positions. However, it also appears that while these PEF members would be terminated from their temporary appointments, they would not be left unemployed since most had a "fall-back" position with the state and could compete for other positions as well.

**10.** The Hearing Panel, which is the PEF body in charge of imposing discipline, sent Plaintiff two letters on March 3, 1995. The first letter, representing the Hearing Panel's "decision," stated that he was found to have "acted in an unethical manner by asking for the termination of dues paying members of the Public Employees Federation of which [he was] an elected representative and, as such, violated section (e) [of the Ethics Code]." (*See* Fuhrman Aff. Ex. A.) However, the Letter of Reprimand makes no mention of Plaintiff's elected representative capacity. (*See* Fuhrman Aff. Ex. C.)

ing.[11] *See* 29 U.S.C. § 411(a)(5). In his Complaint, the Plaintiff asserts that he did not receive these safeguards.

### A. Written Specific Charges

■ The requirement that a union member receive a written specific charge under § 411(a)(5)(A) is satisfied when the member receives a detailed statement of the facts underlying the grievance. *See Curtis v. Int'l Alliance of Theatrical Stage Employees & Moving Picture Machine Operators,* 687 F.2d 1024, 1027 (7th Cir.1982) (quoting *Int'l Bhd. of Boilermakers v. Hardeman,* 401 U.S. 233, 245, 91 S.Ct. 609, 28 L.Ed.2d 10 (1971)). The statement of facts should contain "a description of the nature of the offense, the circumstances surrounding the alleged infraction, and as nearly as may reasonably be ascertained, the time and place of the occurrence." *Reilly v. Sheet Metal Workers' Int'l Assoc.,* 488 F.Supp. 1121, 1126 (S.D.N.Y. 1980). While reference to a specific provision of the union's constitution or code of ethics is preferable, absence of such alone does not violate § 411(a)(5)(A). *See Frye v. United Steelworkers of America,* 767 F.2d 1216, 1223 (7th Cir.1985).

In this case, the Defendants forwarded a copy of the grievance to the Plaintiff. While not setting forth the actual provisions of the ethics code allegedly violated, the grievance did contain the nature of the alleged offenses, the circumstances surrounding such offenses, the dates such offenses occurred, and the locations at which such offenses took place. (*See* Stanford–Smith Aff. Ex. H.) Plaintiff was fully aware that the grievance concerned his participation in a lawsuit which sought the dismissal of PEF members and his use of Division 234 monies to finance such lawsuit. Plaintiff even submitted a reply to the charges. (*See* Beagle Aff. Ex. B.) Therefore, the Court finds that the Plaintiff was provided with written specific charges that complied with § 411(a)(5)(A).

### B. Reasonable Time to Prepare a Defense

■ Plaintiff contends that his ability to defend himself against the charges was hampered because he was not informed of the precise PEF Ethics Code or constitutional provision that he allegedly violated. Furthermore, the Plaintiff asserts that the charges against him kept changing. Because the Plaintiff has failed to submit any evidence to support these assertions, the Court finds that the Plaintiff was given a reasonable time to prepare a defense.[12]

### C. Full and Fair Hearing

■ Section 411(a)(5)(C) requires the union member to be afforded a full and fair disciplinary hearing. *See* 29 U.S.C. § 411(a)(5)(C). This right to due process extends to union officials who are elected representatives or union officials. *See Charron v. American Federation of State, County and Municipal Employees Union, AFL–CIO,* 470 F.2d 156 (6th Cir.1972) (applying § 411(a)(5) to union official's disciplinary hearing). During the disciplinary hearing, the accused must be given the ability to present witnesses and cross-examine witnesses and the trial board or panel must be impartial. *See Wildberger v. AFGE,* 86 F.3d 1188, 1193–95 (D.C.Cir.1996); *Georgopoulos v. Int'l Bhd. of Teamsters,* 942 F.Supp. 883, 894–95 (S.D.N.Y.1996), *aff'd,* 116 F.3d 1472, 1997 WL 355346 (2d Cir.1997); *see also Reilly v. Sheet Metal Workers',* 488 F.Supp. 1121, 1127 (S.D.N.Y.1980). In deciding whether a union member has received a full and fair hearing, a court should consider whether there was "some evidence" offered by the grievant at the hearing to support the charges. *See Int'l Bhd. of Boilermakers v. Hardeman,* 401 U.S. 233, 246, 91 S.Ct. 609, 28 L.Ed.2d 10 (1971).

The grievance against the Plaintiff was reviewed by three different union bodies— the Ethics Committee, the Ethics Hearing Panel, and the PEF Executive Board. The evidence shows that the Plaintiff received advance notice of the dates such review would be held and also received copies of the PEF Ethics Code and procedural rules.

---

**11.** There is no dispute that the Letter of Reprimand constituted "discipline."

**12.** During oral argument, Plaintiff was unable to articulate how his defense would have differed if he was provided with the specific ethics code provision.

These rules gave the Plaintiff the right to submit evidence and examine witnesses. (*See* Beagle Aff. ¶ 19; Ford Aff. ¶ 5–7; Ford Aff. Exs. A, B, & C; Fuhrman Aff. ¶ 12.) The rules also gave the Plaintiff the opportunity to be represented by a PEF member of his choice, and the Plaintiff was in fact represented by an attorney before the Hearing Panel.[13] Although, the Plaintiff did not receive transcripts of the hearings, he was not entitled to such transcripts. *See Rosario v. Amalgamated Ladies' Garment Cutters' Union, Local 10, I.G.L.W.U.,* 605 F.2d 1228, 1240 (2d Cir.1979). Plaintiff also has asserted that he was denied due process because the Ethics Committee took over 240 days to reach its initial decision and because the PEF adopted a Revised Code of Ethics. However, the Plaintiff has failed to submit evidence which shows how these occurrences denied him due process.[14] Finally, "some evidence" was submitted to find the Plaintiff guilty of each charge. Therefore, the Court finds that the Plaintiff did receive his due process as guaranteed under § 411(a)(5), and grants the Defendants' motion for summary judgment regarding such claim.

### III. The Counterclaim

■ In his cross-motion, the Plaintiff seeks to have the Defendants' counterclaim dismissed because he believes it was filed in retaliation of him filing this action against the PEF and the individual Defendants. Plaintiff additionally asserts that the Defendants have selectively decided to seek reimbursement of the $245.00 from him, and not his co-signor of the check nor any of the other stewards who voted in passing the measure.[15]

Defendants Sheedy and Ford argue that under § 501(a), a shop steward must hold and expend the union's money solely for the benefit of the union and its members, and also refrain from dealing with the union as an adverse party. Defendants maintain that the Plaintiff violated both duties by (1) authoriz-

ing $245.00 to be spent on the Schulz lawsuit, and (2) by seeking in such lawsuit the termination of PEF members. Defendants argue that the Plaintiff personally benefited by authorizing the check, and that he knew that it was manifestly unreasonable to do so.

■ Section 501(a) imposes a duty upon all officers and agents, including shop stewards "to hold [union] money and property solely for the benefit of the organization and its members and ... to refrain from dealing with such organization as an adverse party ...." 29 U.S.C. § 501(a). While authorization through a vote may act as a defense to a claim for violation of § 501(a), such defense may be lost if the court determines that the officer or agent acted "so manifestly unreasonable as to evidence a breach of the fiduciary obligation." *See Morrissey v. Curran,* 650 F.2d 1267, 1273–74 (2d Cir.1981).

When the Division 234 stewards voted to expend up to $300.00 on costs associated with the Schulz lawsuit, the Plaintiff was aware that PEF had a policy that Divisions were not supposed to spend money for legal services. (Eisenstein Aff. Ex. A, Pl's Dep. at 17.) During the Division 234 Council meeting in which the stewards voted to spend up to $300.00 on the Schulz lawsuit, there was some discussion that the division was not permitted to spend funds on legal services. (*See* Stanford–Smith Aff. Ex. B.) Whether the Plaintiff's act of signing the check was so "manifestly unreasonable" as to deprive him of his defense of authorization is a question of fact to be decided by a jury. Therefore, the Court denies the both parties' motion for summary judgment on the counterclaim.

### Conclusion

After reviewing the entire file in this matter, the submissions of counsel, and the applicable law, it is hereby

ORDERED that the Defendants' motion for summary judgment is GRANTED with respect to the Plaintiff's § 411(a)(5) claim and such claim be dismissed; it is further

---

13. The attorney was also a Division 234 member.

14. The evidence submitted shows that there were several circumstances which attributed to the delay with the Ethics Committee and the Ethics Code was revised in an effort to ensure that Plaintiff receive a fair hearing. (*See* Beagle Aff. ¶ 14–21, 25–32.)

15. Plaintiff only raises the issue of selective enforcement as a defense to the counterclaim, and does not assert it as a basis for another violation of the LMRDA.

ORDERED that the Defendants' motion for summary judgment is DENIED with respect to the Plaintiff's § 411(a)(4) claim and its counterclaim; and it is further

ORDERED that the Plaintiff's motion for summary judgment on his § 411(a)(4) claim and the Defendants' counterclaim is DENIED.

IT IS SO ORDERED.