## WYOMING VALLEY WEST SCHOOL DISTRICT

v.

## NORTHWEST SCHOOL DISTRICT, Lake–Lehman School District, Dallas School District and Wyoming Area School District, Appellants.

Commonwealth Court of Pennsylvania.

Argued April 8, 1997.

Decided June 9, 1997.

James A. Kelly, Scranton, for appellants.

Howard L. Kelin, Lancaster, for appellee.

Before PELLEGRINI and FRIEDMAN, JJ., and RODGERS, Senior Judge.

FRIEDMAN, Judge.

Northwest School District, Lake–Lehman School District, Dallas School District and Wyoming Area School District (collectively, Districts) appeal from an order of the Court of Common Pleas of Luzerne County (trial court), which granted the Motion for Summary Judgment filed by Wyoming Valley West School District (Wyoming Valley) in its Declaratory Judgment Action, thereby confirming Wyoming Valley's right to terminate its participation in the Consolidated Articles of Agreement for the Establishment and Operation of the West Side Area Vocational–Technical School as of July 1, 1996.

The Districts and Wyoming Valley, five neighboring public school districts, entered into an agreement to establish and operate the West Side Area Vocational–Technical School (Vo–Tech) on June 23, 1966. This original agreement was superseded by the current Consolidated Articles of Agreement for the Establishment and Operation of the West Side Area Vocational–Technical School (Articles), dated May 31, 1974, as amended November 25, 1986.

According to paragraph 18 of the Articles, participating school districts contribute to-

ward the operating expenses of Vo–Tech in proportionate shares based on the average daily membership of pupils from each district attending Vo–Tech from the school year two years prior to the year of funding. (Amendment to the Articles, para. 18, R.R. at 19-20.) Based on enrollment data from the 1994–95 school year, the combined Districts provided forty-one percent (41%) of Vo–Tech's student enrollment and Wyoming Valley provided fifty-nine (59%). (Districts' brief, Exhibit B.) Consequently, Wyoming Valley pays 59% of Vo–Tech's operating costs.

However, with respect to the governing of Vo–Tech, the Articles provide for equal voting representation among the five participating school districts. The Articles establish two governing structures, the Area Vocational–Technical Board (Board) and the Operating Agent (Joint Committee), with the Board delegating the operation, administration and management of Vo–Tech to the Joint Committee. (Articles at para. 8, R.R. at 12.) The Board consists of all the members of the school boards of the participating school districts, and the Joint Committee consists of three school board members from each participating school district, for a total of fifteen, with one vote per member.[1] (Articles at para. 10a, R.R. at 13.) The Board takes "actions" by majority vote of the members of the school boards from all five participating school districts, except that approval of the annual budget also requires the affirmative vote of two-thirds of the participating school districts. (Articles at paras. 9a, 9c, R.R. at 12.) Thus, while paying almost 3/5 of Vo–Tech's total expenses, Wyoming Valley has only 1/5 of the voting power in Vo–Tech's governance structure.

Dissatisfied that its share of operating expenses was disproportionate to its voting strength, and alleging that this incongruence rendered it unable to prevent decisions and actions relating to the fiscal affairs and operation of Vo–Tech which, in its view, were inappropriate and imprudent, Wyoming Valley sought to have the Articles modified,

---

1. According to the definitions included in the Articles, the Area Vocational–Technical Board "shall mean all the participating boards which are party to this agreement, acting jointly, and shall hereinafter be referred to as the Board." The Operating Agent "shall be a Joint committee elected from among the several participating districts." (Articles at paras. 1b, 1c; R.R. at 11.)

pursuant to paragraph 26 of the Articles, to increase its voting power.[2] Wyoming Valley stated that, if the Districts refused to consider this possibility, it would terminate its participation in the Articles effective July 1, 1996, pursuant to paragraph 25 of the Articles.

Paragraphs 25 and 26 of the Articles provide:

25. This agreement shall continue in full force and effect for a term or period of thirty years commencing July 1, 1966, and thereafter until otherwise terminated.

26. No change shall be made in this agreement without the consent of each of the Participating School Districts first obtained by the affirmative vote of a majority of the school directors thereof.

(R.R. at 17.) The current dispute involves the differing interpretations over the effect of the language of paragraph 25 on the continuation of Vo–Tech. Wyoming Valley contends that, through its clear and unambiguous language, paragraph 25 establishes Wyoming Valley's right to terminate its participation in the Articles, after expiration of the thirty-year term, without the consent of the other participating school districts. However, the Districts claim that, because the termination provision in paragraph 25 is governed by the unanimous consent provision in paragraph 26, the Articles can be terminated only by unanimous consent of all the participating school districts. Thus, according to the Districts, Wyoming Valley lacks the power to unilaterally terminate the Articles on July 1, 1996, or any other date.

On May 11, 1995, Wyoming Valley filed an Action for Declaratory Judgment seeking a declaration that it may terminate its participation in the Articles unilaterally, with or without cause, effective July 1, 1996, the termination date of the Articles. Prelimi-nary Objections to Wyoming Valley's Complaint were denied, and the Districts then filed an Answer along with New Matter to Wyoming Valley's Action for Declaratory Judgment.

On November 16, 1995, subsequent to filing its Answer to the Districts' New Matter, Wyoming Valley filed a Motion for Summary Judgment. On April 23, 1996, following oral argument, the trial court issued an opinion and order granting Wyoming Valley's Motion for Summary Judgment, thus granting the request for a Declaratory Judgment confirming Wyoming Valley's right to terminate its participation in the Articles as of July 1, 1996. The Districts now appeal from that decision.

■ Our scope of review over a trial court's grant of summary judgment is limited to determining whether the trial court made an error of law or abused its discretion. *Salerno v. LaBarr,* 159 Pa.Cmwlth. 99, 632 A.2d 1002 (1993), *appeal denied,* 537 Pa. 655, 644 A.2d 740 (1994). In considering a motion for summary judgment, the court must examine the record in the light most favorable to the nonmoving party to determine whether there is an issue of fact to be tried, resolving all doubts against the nonmoving party. *Ruszin v. Department of Labor & Industry, Bureau of Workers' Compensation,* 675 A.2d 366 (Pa.Cmwlth.1996). A motion for summary judgment may be granted only if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Pa. R.C.P. No. 1035(b).[3]

The Districts argue that the trial court erred in granting Wyoming Valley's Motion for Summary Judgment here because a gen-

2. At the October 24, 1994 meeting of the Joint Committee, Wyoming Valley sought to alter the Articles. Specifically, Wyoming Valley moved for: (1) a weighted vote based on student enrollment; (2) a majority vote to a school district with more than 50% of the students enrolled in Vo–Tech; and/or (3) full control of all Vo–Tech operations with the Districts paying tuition for each of their students enrolled there. The motions made by Wyoming Valley's members were unac-ceptable to other members of the Joint Committee. (Districts' brief, Exhibit C; Minutes of Oct. 24, 1994 meeting at 5–6, paras. 30–32.)

3. We note that Pa. R.C.P. No. 1035 was rescinded effective July 1, 1996, after the decision in this case, and replaced with Pa. R.C.P. Nos. 1035.1—1035.5.

uine issue of material fact exists where the parties have offered reasonable, but differing, contractual interpretations of paragraph 25 of the Articles. The Districts also contend that the trial court's grant of Wyoming Valley's request for Declaratory Judgment results in an outcome which is contrary to law and to the original purpose and intent of the contracting parties in executing the Articles.

In making this argument, the Districts rely on *Kitmitto v. First Pennsylvania Bank, N.A.*, 518 F.Supp. 297 (E.D.Pa.1981), and *Barcelona v. Fox Grocery Company Employees' Pension Plan*, 483 F.Supp. 1128 (W.D.Pa.1980), for the proposition that where the parties offer reasonable, yet varying, interpretations of a contract, the dispute presents a triable issue of fact, so that summary judgment would be improper. Accordingly, the Districts contend that, because they alleged that paragraph 25 was ambiguous, and they offered a reasonable reading of that paragraph which differed from Wyoming Valley's, (*see* Districts' Answer to Action for Declaratory Judgment, paras. 23, 25, R.R. at 33–34), the trial court erred by granting summary judgment here.

On the other hand, Wyoming Valley maintains that *Kitmitto* and *Barcelona* merely stand for the rule that *where a contract is ambiguous,* a question of fact arises if the parties have reasonable but differing interpretations; however, Wyoming Valley asserts that, because this contract provision is not ambiguous, these cases do not apply. Indeed, Wyoming Valley asserts that neither paragraph 25 nor paragraph 26 is ambiguous—that paragraph 25 clearly refers to "termination" of the Articles, whereas paragraph 26 refers to "changes" in the Articles—and the two terms, presented in separate paragraphs, must be considered separately. Wyoming Valley points out that, while paragraph 26 requires the consent of each of the participating school districts before the Articles can be *modified,* paragraph 25 does not require such unanimity when it comes to *terminating* the Articles, thus demonstrating that, once the thirty-year time period has elapsed, the parties did not intend to impose the burden of

unanimous agreement as a further requisite of termination.

▉ Like the trial court, we agree with Wyoming Valley that paragraph 25 of the Articles clearly provides for a thirty-year term, beyond which termination of the agreement may be effectuated by any of the participating school districts, without the consent of the other districts. In fact, we feel that the trial court provided a comprehensive analysis of the matter in its opinion, when it stated:

The sole provision in the [Articles] dealing with termination is paragraph 25, which provides: 'This agreement shall continue in full force and effect for a term or period of thirty years commencing July 1, 1966, and thereafter until otherwise terminated.' [Wyoming Valley] contends this language is clear and unambiguous, and establishes its right to terminate its participation in the [Articles] after the thirty-year term without the consent of the other participating school districts.

[The Districts] argue that the termination provision in paragraph 25 is governed by the unanimous consent provision in paragraph 26, which states: 'No change shall be made in this agreement without the consent of each of the Participating School Districts first obtained by the affirmative vote of a majority of the school directors thereof.' In short, [the Districts] contend the [Articles] can be terminated only by unanimous consent of all the participating school districts.

We must agree with [Wyoming Valley] that paragraph 25 of the [Articles] clearly and unequivocally establishes a fixed, thirty-year term to the [Articles], *School District of Borough of Irwin v. School District of North Huntington [Huntingdon] Township,* 358 Pa. 78, 82–84, 55 A.2d 740, 742–43 [(1947)], and that the obligation of the court is to give effect to its clear meaning, *Steuart v. McChesney,* 498 Pa. 45, 48–49, 444 A.2d 659, 661 (1982), and *Standard Venetian Blind Co. v. American Empire Insurance Co.,* 503 Pa. 300, 304, 469 A.2d 563, 565 (1983). Hence, [Wyoming Valley] is entitled to terminate its participation in the [Articles] after its termination date on

July 1, 1996, without the consent of the other participating schools.

The interpretation of paragraph 25 advanced by [the Districts] (i.e. that the [Articles] cannot be terminated without the unanimous consent of the parties) is belied by the clear meaning of paragraph 25 and runs afoul of accepted guidelines of contract interpretation. To begin with, if [the Districts'] interpretation were accepted, paragraph 25 of the [Articles] effectively becomes surplusage, contrary to the general mandates (1) that no provision of a contract should be treated as surplusage or redundant if any reasonable meaning consistent with other parts of the agreement can be given to it, *Sparler v. Fireman's Insurance Company of Newark, New Jersey,* 360 Pa.Superior Ct. 597, 607, 521 A.2d 433, 438 (1987), and (2) that the court must determine the intent of the parties and give effect to all provisions of the contract. *Commonwealth of Pennsylvania, Department of Transportation v. Manor Mines, Inc.,* 523 Pa. 112, 119, 565 A.2d 428, 432 (1989). Furthermore, if [the Districts'] interpretation were to prevail, any one of the five participating school districts would be given unfettered power to mandate the indefinite participation of all five school districts to the [Articles], contrary to the general principal that contractual provisions should not be construed to create a perpetual term unless such intention is expressed in clear and unequivocal terms. *Leet v. Vinglas,* 366 Pa.Superior Ct. 294, 302, 531 A.2d 17, 21 (1987). Finally, [the Districts'] interpretation of paragraph 25 of the [Articles] runs afoul of the public policy proposition that school districts should enter into a joint school agreement for only a limited or experimental period, thereby giving the board of directors of each school district the opportunity to examine the benefits and detriments of the agreement and to determine if the arrangement should be continued. *School District of Borough of Irwin,* 358 Pa. at 83, 55 A.2d at 742.

(Trial ct. op. at 6–7; R.R. at 74–75.)

Based on this sound reasoning, we affirm.

## ORDER

AND NOW, this 9th day of June, 1997, the order of the Court of Common Pleas of Luzerne County, dated April 23, 1996, is hereby affirmed.

